**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| BERKLEY REGIONAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| MAIN STREET ASSET MANAGEMENT LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, BERKLEY REGIONAL INSURANCE COMPANY ("BRIC"), pursuant to FED. R. CIV. P. 57, files this complaint for declaratory judgment against Defendant MAIN STREET ASSET MANAGEMENT LLC ("Main Street") and states:

## NATURE OF ACTION

1.      This matter involves a dispute over an insurance policy BRIC issued to Main Street in February 2025 (the "Policy") based on material misrepresentations made by Main Street in the application for and procurement of such Policy.

2.      Based on such material misrepresentations, the Policy should be rescinded and deemed void *ab initio.*

3.      Even if not rescinded, the Policy does not afford coverage for the matter styled *Mertiri Family Trust et al. vs. Main Street Asset Management LLC et al.*, Case No. 25-00711, pending in the Dispute Resolution Forum afforded by the Financial Industry Regulatory Authority (FINRA) (the "*Mertiri* Arbitration"), for myriad reasons set forth herein.

4.      BRIC seeks a declaration and judgment finding that the Policy is void *ab initio* based on material misrepresentations and/or, in the alternative, that BRIC has no duty to defend or indemnify Main Street in the *Mertiri* Arbitration.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this dispute arises between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      This Court has authority to grant BRIC declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and FED. R. CIV. P. 57.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the *Mertiri* Arbitration and the insurance coverage dispute between BRIC and Main Street (including the Policy's issuance) occurred in this district. Further, Main Street is domiciled in this district.

8.      All conditions precedent to bringing this action have occurred or have been waived.

## THE PARTIES

9.      BRIC is an Iowa corporation with its principal place of business in Iowa. BRIC issued Registered Investment Advisors Professional Liability Policy No. MLIA-45006146-20 to Main Street for the period of February 3, 2025 to February 3, 2026.

10.     Main Street is a New York limited liability company with its principal place of business in Rockland County, New York. Main Street is an Insured under the Policy issued by BRIC. On information and belief, Erguis Mertiri ("Ed") is the principal and sole member of Main Street. Ed is a citizen of the State of New York.

## FACTUAL ALLEGATIONS

11.     *THE PRE-ARBITRATION COMPLAINTS:* On July 19, 2024, Keti Mertiri ("Keti") directly contacted Main Street's insurer, Markel American Insurance Company ("Markel"), to file a claim regarding losses to certain trusts for which Keti and Anisa Mertiri ("Anisa") serve as trustees (the "Trusts") managed by Main Street, seeking full reimbursement for such losses (the "Keti Complaint"). See Exhibit "A", attached hereto.

12.     On January 30, 2025, Anisa also directly contacted Markel to file a claim regarding losses to the Trusts managed by Main Street (the "Anisa Complaint"). See Exhibit "B", attached hereto.

13.     On January 31, 2025, Jeff Karcz of ARC Excess & Surplus, LLC, Main Street's broker for its policy placed with Markel and then in force, contacted Markel regarding the Anisa Complaint. See Exhibit "C", attached hereto.

14.     *THE APPLICATION:* On or about November 25, 2024, Main Street first submitted an application for insurance coverage to BRIC, via Lockton as broker for Main Street with respect to the procurement of a policy from BRIC. Main Street later submitted an updated Application docusigned on February 3, 2025, but the same in all material respects to the originally submitted application (collectively, the "Application") . See Exhibit "D", attached hereto.

15.     Under Section 2(1) of the Application, Main Street is asked "Has any professional liability (E&O) claim, complaint, or proceeding been made against you or any other applicant or predecessor organization proposed for this insurance?" Main Street responded "No".

16.     Under Section 2(2) of the Application, Main Street is asked "Is any applicant aware of any fact, error, omission, circumstance, or situation that may provide grounds for any claim under the proposed insurance?" Main Street responded "No."

17.     The above statements made in the Application were false. Main Street was aware of the Keti Complaint when it signed and submitted the Application in November 2024. Main Street was aware of the Anisa Complaint when it signed and submitted an updated Application on February 3, 2025.

18.     *THE POLICY*: On February 3, 2025, in reliance on the information provided in the Application and updated Application, amongst other underwriting submissions, BRIC bound and issued the Policy No. MLIA-45006146-20 to Main Street as the sole named insured, effective February 3, 2025 to February 3, 2026 (the "Policy"). A true and correct copy of the Policy is attached as Exhibit "E."

19.     Section 5(V) of the Policy provides, in relevant part, that in granting coverage under the Policy, BRIC has relied upon the statements and representations in the Application. The Application is incorporated into and constitutes part of the Policy. The Policy provides that Main Street represent that all such statements and representations in the Application are true. All such statements and representations in the Application are deemed material to the acceptance of the risk and/or the hazard assumed by the Insurer under the Policy.

20.     The Policy contains a Manuscript Endorsement (BFS MNS END 99 07 21) (Reliance Upon Other Carrier's Application) which provides:

> In consideration of the premium paid, it is hereby understood and agreed that the Insurer has relied upon the truth, accuracy, and completeness of all statements, declarations, representations, and warranty(ies) made to the Insurer by the **Company** (on behalf of all **Insureds**) in the submission of an **Application** of another Insurance Carrier (hereby referred to as the "Other Carrier's Application") and such statements, declarations, representations, and warranty(ies) are deemed material to the acceptance of the risk or the hazard assumed by the Insurer under the Policy.

> As such, with the Insurer's Reliance upon the Other Carrier's **Application**, the definition of an **Application** under Section 3. DEFINITIONS, of this policy, is amended to include the following:

**Type of Policy Application**: Investment Advisor Professional Liability Renewal Application

**Carrier/Application/ Form #**: Markel American Insurance Company / Investment Adviser, Professional Liability And Directors and Officers Liability – Renewal Business Application / MAPL 0004 07 17

**Date Signed** 02/03/2025

It is further agreed that if any statements, declarations, representations, and warranty(ies) are not true, accurate, and complete, any **Claim** arising from any matter not accurately or completely disclosed, or disclosed at all, shall be excluded from coverage.

(Ex. E)

21.     The Policy contains the following preamble, providing that:

Except as otherwise specified herein, liability coverage provided by this policy is written on a claims made basis and only cover **Claims** first made during the **Policy Period** or any renewal thereof, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period. Unless this policy is otherwise endorsed, **Defense Expenses** shall reduce and may exhaust (use up 100% of) the Limit of Liability available to pay judgments or settlements. Retentions shall apply to **Loss**, including **Defense Expenses**.

With respect to **Claims**, this insurance applies only if the **Claim** arises out of a **Wrongful Act** which occurs on or after the **Retroactive Date**, if any, shown in the Declarations.

(Ex. E)

22.     The Policy also contains an Investment Adviser Professional Services Liability

Coverage Part, which contains an Insuring Agreement providing that:

The Insurer shall pay on behalf of the **Investment Adviser**, **Loss** for which an **Investment Adviser** becomes legally obligated to pay as a result of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or any renewal thereof, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for an **Investment Adviser Professional Services Act** taking place on or after the **Retroactive Date**, if any.

(Ex. E)

23.     The Policy also contains the following relevant definitions:

C. **Claim** means the following, including any appeal therefrom:

     a.    a written demand against an **Insured** for monetary damages or non-monetary relief for a **Wrongful Act**, commenced by the **Insured's** receipt of such demand;

     b.    a civil proceeding against an **Insured** for a **Wrongful Act**, commenced by the service of a summons, complaint, or similar pleading;

     c.    a notice of arbitration or mediation, a request for an arbitration or mediation, an arbitration or mediation, or any other formal alternative dispute resolution, commenced by the **Insured's** receipt of such notice or request;

…

NN. **Interrelated Wrongful Acts** means **Wrongful Acts** that have as a common nexus of any fact, circumstance, situation, event, transaction, or series of facts, circumstances, situations, events, or transactions.

…

XXX. **Retroactive Date** means the date shown as such in Item 6 of the Declarations. If "none" or "n/a" is entered in the space provided for the **Retroactive Date**, then no **Retroactive Date** applies to this policy

(Ex. E)

24.    The Policy further contains the following relevant exclusions:

**SECTION 4: EXCLUSIONS**

**Exclusions Applicable to All Coverage Parts**

The Insurer shall not be liable for that portion of **Loss** in connection with any **Claim**:

N. **Interrelated Wrongful Acts**
    based upon, arising out of, or attributable to any fact, circumstance, event, transaction, situation, or **Wrongful Act** that, prior to the inception date of this policy, was the subject of any notice given and accepted under any policy of insurance of which this policy is a direct or indirect renewal or replacement, or any other **Wrongful Act**, whenever occurring, which together with a **Wrongful Act** that has been the subject of such notice, would constitute **Interrelated Wrongful Acts.**

…

W. **Pending or Prior Matters**
    based upon, arising out of, or attributable to any written demand, suit, regulatory **Investigation**, or other proceeding pending against, or order, decree, or judgment entered for or against any **Insured** on or prior to the date shown as the Pending or Prior Date in Item 6 of the Declarations.

…

AA. **Prior Notice Given**

> based upon, arising out of, or attributable to any fact, circumstance, event, transaction, situation, or **Wrongful Act** that, prior to the inception date of this policy, was the subject of any notice given and accepted under any policy of insurance of which this policy is a direct or indirect renewal or replacement, or any other **Wrongful Act**, whenever occurring, which together with a **Wrongful Act** that has been the subject of such notice would constitute **Interrelated Wrongful Acts**

BB. **Prior Wrongful Acts**

> based upon, arising out of, or attributable to any **Wrongful Act** which occurred prior to the **Retroactive Date**, if any.

(Ex. E)

25.     ***THE* MERTIRI *ARBITRATION***: On March 31, 2025, a statement of claim was filed in the Dispute Resolution Forum afforded by FINRA by Mertiri Family Irrevocable Trust, Mertiri Family Trust, Mertiri Family Trust FBO Edrik Mertiri, Mertiri Family Trust FBO Krita Mertiri, and Mertiri Family Trust FBO Leana Mertiri ("Claimants") seeking damages, thus initiating the *Mertiri* Arbitration, a copy of which is attached as Exhibit "F."

26.     The *Mertiri* Arbitration arises from alleged poor investment advice provided by Main Street/Ed to Claimants. Claimants allege causes of action for (i) breach of contract and warranties, promissory estoppel, (ii) violations of the New York Consumer Protection from Deceptive Acts and Practices Act and corresponding federal consumer protection laws/regulations, (iii) breach of fiduciary duty, (iv) negligence and gross negligence, (v) unjust enrichment, and (vi) common law, statutory claims and damages. *Id*. at p. 11.

27.     Specifically, Claimants allege as follows in the *Mertiri* Arbitration:

        a.      At Paragraph 6: "Historically, Main Street has custodied its customer accounts with Charles Schwab & Co. However, in 2022, Main Street moved trust assets over to Respondent Interactive Brokers and opened accounts that allowed Main Street to trade trust assets."

b.      At Paragraph 7: "Upon moving the trust assets to IB [in 2022], Main Street began a wholly speculative and inappropriate investment strategy for Claimants. First, Main Street very heavily traded the assets, something which benefited both Main Street and IB, but not Claimants. ***In less than one year***, Main Street traded more than $100 Million worth of securities in Claimants' accounts, which were worth, collectively, less than $3 Million." (Emphasis added).

c.      At Paragraph 8: "Additionally, Main Street was using heavy leveraged [sic] in this insane trading…By October 2022, Main Street had leveraged Claimants' accounts by almost $1 Million, tremendously increasing the risk to the Trusts' assets."

d.      At Paragraph 12: "In October 2022, only a few months after moving to Respondent Interactive Brokers, Main Street had built positions totaling $4 Million (more than the entire value of the account) of…two ETFs."

*See* Ex. F.

28.      Markel is currently defending the *Mertiri* Arbitration on behalf of Main Street under its policy that was in force at the time it was provided notice of the Keti and Anisa Complaints.

29.      ***RESCISSION AND TENDER OF PREMIUM***. On September 30, 2025, BRIC issued correspondence to Main Street advising that, based on material misrepresentations in the Application, BRIC was rescinding the Policy. See Exhibit "G".

30.      BRIC tendered the return of premium to Main Street in the form of Check No. 0000079139, in the amount of $2,926.00. See Ex. G.

## COUNT I-DECLARATORY JUDGMENT
## RESCISSION

31.     BRIC re-alleges and incorporates paragraphs 1 through 29 as if fully alleged in this Paragraph 30 of Count I.

32.     On July 19, 2024, Keti contacted Markel directly to file a Complaint regarding losses to the Trusts managed by Main Street.

33.     On January 30, 2025, Anisa also contacted Markel directly to file a Complaint regarding losses to the Trusts managed by Main Street.

34.     Main Street was aware of the Keti Complaint on or about July 19, 2024.

35.     Main Street and its agent, ARC, were aware of the Anisa Complaint  on or about January 30, 2025.

36.     Upon information and belief, BRIC understands that Ed instructed Anisa to tender her Complaint to Markel.

37.     On or about November 25, 2024, Main Street first submitted an application for insurance coverage to BRIC, via Lockton (the "Application"). Main Street later submitted an updated Application docusigned on February 3, 2025, but the same in all material respects.

38.     Main Street misrepresented to BRIC that it was unaware of any claims or complaints made against it as of the date it originally signed the Application in November 2024, and again when it signed and submitted an updated Application on February 3, 2025, the very day Main Street requested that the BRIC Policy go into effect.

39.     The existence of two complaints prior to issuance of the BRIC Policy is a material fact that should have been disclosed to BRIC, but was not.

40.     Had the existence of the two complaints been disclosed to BRIC, BRIC would not have issued the Policy.

41.     BRIC relied in good faith on the information provided to it by Main Street in the Application and procurement of the Policy.

42.     BRIC issued correspondence to Main Street rescinding the Policy and tendered the return of the premium paid for the Policy to Main Street.

43.     Accordingly, BRIC requests that the court issue an order declaring that the Policy is rescinded and void *ab initio*.

**COUNT II-DECLARATORY JUDGMENT**
**NO COVERAGE BASED ON INACCURATE**
**AND/OR INCOMPLETE DISCLOSURES**

44.     BRIC re-alleges and incorporates paragraphs 1 through 41 as if fully alleged in this Paragraph 42 of Count II.

45.     The Policy provides that Main Street agrees that in the event that any statements or representations are untrue, the Policy shall not afford any coverage for any Claim arising from any matter not accurately or completely disclosed, or not disclosed at all.

46.     Main Street did not accurately, completely, or at all disclose the existence of two complaints of which it was aware prior to issuance of the BRIC Policy, the Keti and Anisa Complaints.

47.     The *Mertiri* Arbitration arises out of and involves the same alleged wrongful conduct as is at issue in the Keti and Anisa Complaints filed in July 2024 and January 2025, respectively.

48.     Accordingly, and in the alternative, BRIC requests that the court issue a declaration that the *Mertiri* Arbitration does not trigger the BRIC Policy and BRIC owes Main Street no defense or indemnity in respect of the *Mertiri* Arbitration as a result of the inaccurate and/or

incomplete disclosure of known claims, complaints and/or circumstances that might give rise to a claim.

## COUNT III-DECLARATORY JUDGMENT
## PRIOR WRONGFUL ACTS EXCLUSION

49.     BRIC re-alleges and incorporates paragraphs 1 through 46 as if fully alleged in this Paragraph 47 of Count III.

50.     Exclusion (BB.) of the Policy provides that BRIC shall not be liable for that portion of Loss in connection with any Claim based upon, arising out of, or attributable to any Wrongful Act which occurred prior to the Retroactive Date, if any.

51.     The Policy's Retroactive Date is February 3, 2025.

52.     The Keti and Anisa Complaints involve wrongful conduct that is alleged to have occurred prior to February 3, 2025.

53.     The wrongful conduct in the *Mertiri* Arbitration is alleged to have occurred in 2022 and at other times prior to February 3, 2025.

54.     The *Mertiri* Arbitration arises out of and involves the same alleged wrongful conduct as is at issue in the Keti and Anisa Complaints filed in July 2024 and January 2025, respectively.

55.     Accordingly, and in the alternative, BRIC seeks a declaration that it has no duty to defend or indemnify Main Street for the *Mertiri* Arbitration as it is excluded by Exclusion (BB.) of the Policy.

## COUNT IV-DECLARATORY JUDGMENT
## PENDING OR PRIOR MATTERS EXCLUSION

56.     BRIC re-alleges and incorporates paragraphs 1 through 53 as if fully alleged in this Paragraph 54 of Count IV.

57.     Exclusion (W.) of the Policy precludes Loss in connection with any Claim based upon, arising out of, or attributable to any written demand, suit, regulatory Investigation, or other proceeding pending against, or order, decree, or judgment entered for or against any Insured on or prior to the Pending or Prior Date in Item 6 of the Declarations.

58.     The  Pending or Prior Date in Item 6 of the Policy's Declarations is February 3, 2025.

59.     The *Mertiri* Arbitration is based upon and/or arises out of the pre-February 3, 2025 Keti and Anisa Complaints.

60.     Accordingly, and in the alternative, BRIC seeks a declaration that it has no duty to defend or indemnify Main Street for the *Mertiri* Arbitration as it is excluded by Exclusion (W.) of the Policy.

**COUNT V-DECLARATORY JUDGMENT**
**INTERRELATED WRONGFUL ACTS EXCLUSION**

61.     BRIC re-alleges and incorporates paragraphs 1 through 58 as if fully alleged in this Paragraph 59 of Count V.

62.     Exclusion (N.) of the Policy excludes Loss in connection with any Claim based upon, arising out of, or attributable to any fact, circumstance, event, transaction, situation, or Wrongful Act that, prior to the inception date of this policy, was the subject of any notice given and accepted under any policy of insurance of which this policy is a direct or indirect renewal or replacement, or any other Wrongful Act, whenever occurring, which together with a Wrongful Act that has been the subject of such notice, would constitute Interrelated Wrongful Acts.

63.     Interrelated Wrongful Acts are defined in the Policy as Wrongful Acts that have as a common nexus of any fact, circumstance, situation, event, transaction, or series of facts, circumstances, situations, events, or transactions.

64.    The *Mertiri* Arbitration arises out of and involves the same alleged wrongful conduct as is at issue in the Keti and Anisa Complaints filed in July 2024 and January 2025, respectively, and thus the *Mertiri* Arbitration and Keti and Anisa Complaints concern Interrelated Wrongful Acts.

65.    Main Street gave notice to its insurance carrier, Markel, of the Keti and/or Anisa Complaints on January 31, 2025.

66.    The Policy is a direct or indirect renewal or replacement for the policy issued by Markel under which Markel was given notice of the Keti and Anisa Complaints and under which Markel is currently defending the *Mertiri Arbitration* on behalf of Main Street.

67.    Accordingly, and in the alternative, BRIC seeks a declaration that it has no duty to defend or indemnify Main Street for the *Mertiri* Arbitration as it is excluded by Exclusion (N.) of the Policy.

## COUNT VI-DECLARATORY JUDGMENT
## PRIOR NOTICE GIVEN EXCLUSION

68.    BRIC re-alleges and incorporates paragraphs 1 through 65 as if fully alleged in this Paragraph 66 of Count VI.

69.    Exclusion (AA.) of the Policy precludes Loss in connection with any Claim based upon, arising out of, or attributable to any fact, circumstance, event, transaction, situation, or Wrongful Act that, prior to the inception date of this policy, was the subject of any notice given and accepted under any policy of insurance of which this policy is a direct or indirect renewal or replacement, or any other Wrongful Act, whenever occurring, which together with a Wrongful Act that has been the subject of such notice would constitute Interrelated Wrongful Acts.

70.    The *Mertiri* Arbitration arises out of and involves the same alleged wrongful conduct as is at issue in the Keti and Anisa Complaints filed in July 2024 and January 2025,

respectively, and thus the *Mertiri* Arbitration and Keti and Anisa Complaints concern Interrelated Wrongful Acts.

71.     Markel was provided notice of the Keti and Anisa Complaints, and is currently defending the *Mertiri Arbitration* on behalf of Main Street.

72. The Policy is a direct or indirect renewal or replacement for the policy issued by Markel under which Markel was given notice of the Keti and Anisa Complaints and under which Markel is currently defending the *Mertiri Arbitration* on behalf of Main Street.

73.     Accordingly, and in the alternative, BRIC seeks a declaration that it has no duty to defend or indemnify Main Street for the *Mertiri* Arbitration as it is excluded by Exclusion (AA.) of the Policy.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, BERKLEY REGIONAL INSURANCE COMPANY, requests that:

A.      This Court takes jurisdiction over the parties and subject matter of this declaratory judgment action;

B.      That the Court enter judgment declaring that the Policy is rescinded and void *ab initio.*

C.      That, in the alternative, the Court enter judgment declaring that BRIC has no obligation to defend or indemnify Main Street for the *Mertiri* Arbitration;

D.      Award BRIC costs, as well as any further relief that this Court deems equitable and just.

Respectfully submitted:

**BERKLEY REGIONAL INSURANCE COMPANY**

*/s/ Patrick M. Kennell*
Patrick M Kennell
40 Exchange Place, 20th Floor
New York, New York 10005
Phone: (212) 485-9600
pkennell@kaufmandolowich.com